lml

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MICHELLE KAY MYERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-4137-JAR |
| | ) | |
| | ) | |
| DOLGENCORP, INC., | ) | |
| A WHOLLY OWNED SUBSIDIARY OF | ) | |
| DOLLAR GENERAL CORPORATION, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Michelle Kay Myers claims that defendant Dolgencorp, Inc. ("Dolgencorp" or the "Company") interfered with her right to take, and terminated her in retaliation for requesting, leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. This matter is before the Court on Dolgencorp's Motion for Summary Judgment (Doc. 85). Also before the Court is defendant's Motion to Strike "Corrections" to Plaintiff's Second Deposition (Doc. 94) and plaintiff's Motion to Strike Reply to Response to Motion for Summary Judgment (Doc. 97). The Court has considered the arguments set forth in the parties' briefs along with the record submitted and is now prepared to rule. As described more fully herein, the Court GRANTS defendant's motion for summary judgment, and DENIES the motions to strike.

**I.    Motion to Strike Corrections to Deposition**

After plaintiff filed a second amended complaint, counsel for Dolgencorp deposed plaintiff for a second time on September 21, 2005. Dolgencorp then filed its motion for

summary judgment on September 30, 2005.  Plaintiff subsequently submitted an errata sheet

containing what defendant characterizes as substantive changes to her deposition testimony.

Plaintiff responded to defendant's motion for summary judgment on October 21, 2005, relying

on the errata sheet in that response.  Defendant has moved to strike these corrections to

plaintiff's second deposition on the grounds that plaintiff is attempting to rewrite her testimony

and manufacture an issue to avoid summary judgment, a charge that plaintiff vigorously

disputes.

     Fed. R. Civ. P. 30(e) permits non-material changes to deposition testimony, as well as

those material changes that satisfy the test adopted by the Tenth Circuit in *Burns v. Board of

County Commissioners of Jackson County, Kansas*.[1]   In *Burns*, the court held that Rule 30(e)

changes should be evaluated under the sham affidavit analysis articulated in *Franks v. Nimmo*.[2]

The court reviewed the factors to consider when determining whether to permit Rule 30(e)

changes, which include "whether the affiant was cross-examined during his earlier testimony,

whether the affiant had access to the pertinent evidence at the time of his earlier testimony or

whether the affidavit was based on newly discovered evidence, and whether the earlier testimony

reflects confusion which the affidavit attempts to explain.[3]  A change is material if it bears on an

essential element of a claim or defense.[4]

     Errata sheets may be used to correct errors or to clarify an answer when a question is not

---

[1]330 F.3d 1275 (10th Cir. 2003).

[2]796 F.2d 1230 (10th Cir. 1986).

[3]*Id.* at 1282 (quoting *Franks*, 796 F.2d at 1237).

[4]*See Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

understood, but it may not be used to alter what has been stated under oath.[5]  The *Burns* court

reasoned that Rule 30(e):

> [C]annot be interpreted to allow one to alter what was said under
> oath.  If that were the case, one could merely answer the questions
> with no thought at all then return home and plan artful responses.
> Depositions differ from interrogatories in that regard.  A
> deposition is not a take home examination.[6]

Dolgencorp takes issue with the following changes to plaintiff's second deposition

answers:

Q: So in April of 2004 you knew that your FMLA request had been denied; accurate?

A: I believe so.

Proposed errata change:

A:  No.

Reason for correction: "It was after Dr. Jon released me.  It was about 2 days befor (sic)

my son's graduration (sic) from high school on May 18."

*************************

Q: And do you believe that you received notification from the company that your FMLA

leave request was denied prior to being released by Dr. Jon at the end of April?

A: Yes.

Proposed errata change:

A: No.

Reason for correction: "Reviewed my prior testamony (sic)."

---

[5]*Rios v. Bigler*, 847 F. Supp. 1538, 1546 (D. Kan. 1994) (citation omitted).

[6]330 F.3d at 1282; *see also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (quotation omitted).

**************************

Q: And do you recognize this as the letter or similar notification that you would have received from the company regarding your FMLA leave request denial?

A: Yes, ma'am.

Proposed errata change:

A: No

Reason for correction: "The first time I did not remember the letter.  But when I saw it this time remembered seeing it from the first depesion (sic)."

Plaintiff's original deposition testimony in May 2005 was that she had never seen the April 16, 2004 letter notifying her that her FMLA leave had been denied.  At her second deposition in September 2005, plaintiff answered "yes" to the question, "do you recognize this as the letter *or similar notification* that you would have received from the company regarding your FMLA leave request denial?" (emphasis added).  Plaintiff argues that her errata sheet correction reveals a witness confronted with an intentionally vague question, outside the scope of the parameters set by the Magistrate Judge in permitting the second deposition, and upon review of her earlier testimony, required correction.  Specifically, plaintiff reasons in her errata sheet that she was confused by the question and that her recognition, referenced in her corrected answer, was from seeing the letter at the first deposition, where she testified that she had never seen it before.  Plaintiff also ties the changes to specific events, dates or activities associated by memory.

In this case, plaintiff's counsel was present at both the first and second depositions, and plaintiff was subject to cross-examination.  The Court concludes that the changes set forth on the

4

errata sheets are not based on newly discovered evidence.  The Court has reviewed the questions asked and the answers given at both of the depositions, and concludes that the testimony reflects plaintiff's confusion that would justify the material alterations to the errata sheet.  The corrections to plaintiff's testimony will therefore be considered, and defendant's motion is denied.[7]

## II.      Factual Background

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.  Plaintiff Michelle Myers was employed with Dolgencorp beginning on or about October 19, 2001, until defendant terminated her employment on May 13, 2004.  Plaintiff worked as the "third key" at defendant's Dollar General Store in Atchison, Kansas.  The last day plaintiff worked any hours at the Dollar General Store was on or about March 2, 2004.

Plaintiff was hospitalized from March 3 through 7, 2004, for exacerbation of her asthma. Plaintiff's husband went to the store on March 3, 2004, and reported plaintiff's hospitalization to the store manager, Joanne White, who called plaintiff that day to confirm that she was in the hospital.

Sometime after she was released from the hospital, plaintiff requested leave under the FMLA.  Store manager White called in plaintiff's request for FMLA leave on or about March 16, 2004.  Dolgencorp mailed plaintiff a registered letter dated March 16, 2004, which she received on or about March 20, 2004.  The March 16, 2004 letter included the medical

---

[7]Moreover, the Court concludes that the changes to plaintiff's testimony are not material.  As discussed *infra*, plaintiff is not eligible for FMLA leave because she failed to provide Dolgencorp with the required medical certification paperwork.  The fact that plaintiff did not receive the April 16 letter informing her that her request for FMLA leave had been denied does not alter the fact that plaintiff failed to satisfy her FMLA requirements, and does not bear on an essential element of her claim.

certification form for plaintiff's doctor to complete and advised plaintiff that she had twenty calendar days from the date of the letter, to return the completed medical certification.  The letter also included a notice of FMLA rights, a fitness for duty form and a self-addressed, postage prepaid return envelope.

The letter gave plaintiff a date certain of April 5, 2004, to return the certification, and stated: "**IF THE COMPLETED FORM IS NOT SUBMITTED TO YOUR HUMAN RESOURCES DEPARTMENT, YOUR LEAVE MAY NOT BE PROTECTED BY THE FMLA."** (emphasis in original).  The letter also stated that plaintiff was required to present a "Fitness for Duty" certificate from her doctor prior to her employment being restored, explaining "If such certification is required, but not received, your return to work may be delayed until certification is provided."  Plaintiff was directed to contact Sharon Cockrill, FMLA Administrator, at a toll-free number if she had any questions or concerns.  The certification form also provided Cockrill's fax number.

Dr. Jon Siebert was plaintiff's treating physician.  Dr. Siebert signed a series of notes for plaintiff indicating that she was not to work until checked by the doctor on March 16, 24 and 30, 2004.  Plaintiff's daughter took the notes to the Dollar General Store.  On March 30, 2004, Dr. Siebert signed a note releasing plaintiff to return to work on April 5, 2004.  Plaintiff testified that her daughter took the note to store manager White, and Dolgencorp corporate records note "received release" on April 1, 2004.

After Dr. Siebert's note releasing her to work, plaintiff suffered an apparent relapse. Plaintiff's daughter called the Dollar General Store to inform them that plaintiff would not be able to return to work.  Plaintiff testified that she took the medical certification and fitness for

duty forms to Dr. Siebert on April 5, 2004, and that he helped her fill it out in the examination room.  Plaintiff testified that she mailed the FMLA forms to Dolgencorp in the return envelope on April 5, 2004.  Plaintiff testified that she took the paperwork to the Atchison post office and mailed the certification in the pre-addressed envelope, and that she had to purchase postage for the envelope, but does not recall how much.  Plaintiff does not have a copy of the certification. Plaintiff testified that she assumed that the envelope reached the Company's leave section, and never called anyone at the Company to confirm receipt.  Dolgencorp attests that it never received the completed medical certification form.

Dr. Siebert testified that he did not complete the FMLA medical certification paperwork, nor the fitness for duty form for plaintiff.  Dr. Siebert's records for plaintiff do not contain a medical certification or fitness for duty form or a record of his completion of such forms, although his file on plaintiff does contain copies of the notes that he prepared.  Dr. Siebert testified that he typically keeps a copy of any such forms in the patient's file.  The doctor also testified that he does not recall plaintiff ever talking to him about FMLA leave.

Dolgencorp mailed a letter dated April 16, 2004 to plaintiff advising that defendant did not receive the medical certification within the twenty calendar-day period of April 5, 2004, and that plaintiff's request for leave was denied.  The letter further stated that if plaintiff had any questions or concerns, she should contact Cockrill at a toll-free number.  Although the letter was not sent by registered mail, as was the March 16 letter, Cockrill avers that it was mailed to the same address as the previous correspondence and she did not receive the letter back as undeliverable.  Plaintiff denies receiving the April 16, 2004 letter.

Dolgencorp's leave policy provides that an eligible employee may have up to twelve

weeks of leave under the FMLA.  The Company's policies also provide that employees are required to submit medical certification to verify requested FMLA leave.  Failure by the employee to provide this form can result in the denial of the employee's request for leave. Employees who are not eligible for or who otherwise are not entitled to FMLA leave may be placed on company-provided unprotected leave.  Failure of an employee to return to work from unprotected leave may subject the employee to discipline up to and including termination. Defendant provided plaintiff over ten weeks of time off work from the date she last worked at the Dollar General Store on or about March 2, 2004, until the separation of her employment on May 13, 2004.  Plaintiff signed for and acknowledged receipt of defendant's Retail Employee Handbook for 2001, which contains the Company's Excessive Absence and Tardiness Policy and Paid Vacation Policy.

On April 28, 2004, Dr. Siebert gave plaintiff a note that stated "Has been under my care from 3/3/04 until today for significant respiratory problems."  Although the note does not indicate that plaintiff was released to return to work, plaintiff testified that she considered this a release.  Plaintiff testified that her niece took the note to the Dollar General Store.  Plaintiff testified that she subsequently attempted to contact store manager White, either herself or through family members, but that White never returned her calls.  Nevertheless, plaintiff did not personally go to the Dollar General Store to speak to the store manager about returning to work because she "just did not feel like it was my responsibility."  Plaintiff called the Company's toll-free response line after being discharged from the hospital in March 2004, but did not call Cockrill, the district manager or the corporate office at any time about returning to work.

On May 13, 2004, plaintiff was terminated for failing to return to work after being absent

for over two months.  Store manager White was not involved in decisions regarding plaintiff's vacation pay, plaintiff's request for leave or plaintiff's separation of employment.

### III.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[9]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[10]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[11]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[12]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[13]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[14]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

---

[8]Fed. R. Civ. P. 56(c).

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10]*Id.*

[11]*Id.* at 251-52.

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[14]*Id.*

trial from which a rational trier of fact could find for the nonmovant."[15]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[16]

Plaintiff has moved to strike defendant's reply brief for failure to comply with District of Kansas Rule 7.1(e).  That rule states: "The arguments and authorities section of briefs or memoranda submitted shall not exceed 30 pages absent an order of the court."[17]  Defendant's reply memorandum consists of 34 pages, 17 of which constitute the argument and authorities section of the brief.  The first 18 pages of the reply memorandum consist of defendant's response to plaintiff's response to defendant's 47 facts as well as defendant's response to plaintiff's statement of 34 facts.  The Court has reviewed the reply memorandum and agrees with defendant that the argument and authorities section of the reply brief does not exceed the page limitation imposed by Rule 7.1(e).  Plaintiff's motion to strike is denied.

## IV.    Discussion

### A.    Applicable Law

Pursuant to the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: "[including] [b]ecause of a serious health condition that makes the employee unable to perform the functions of the

---

[15]*Id.*

[16]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[17]D. Kan. R. 7.1(e).

position of such employee."[18]  To verify entitlement to FMLA leave, the employer may require

certification by a health care provider.[19]  Specifically, the FMLA provides that "[a]n employer

may require that a request for leave . . . be supported by a certification issued by the health care

provider of the eligible employee."[20]  A certification is sufficient if it states the following

information:

> (1) the date on which the serious health condition commenced;
> (2) the probable duration of the condition;
> (3) the appropriate medical facts within the knowledge of the health care provider
> regarding the condition; . . .
> (4)(B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement
> that the employee is unable to perform the functions of the position of the
> employee.[21]

The FMLA requires that "the employee shall provide, in a timely manner, a copy of such

certification to the employer."[22]  Specifically, the Department of Labor regulations explain that

"the employee must provide the requested certification to the employer within the time frame

requested by the employer (which must allow at least 15 calendar days after the employer's

request), unless it is not practicable under the particular circumstances to do so despite the

employee's diligent good faith efforts."[23]  "If the employee never produces the certification, the

leave is not FMLA leave."[24]  If an employer requests such documentation, it is required to notify

---

[18]29 U.S.C. § 2612(a)(1)(D).

[19]*Id.* §§ 2613(a), 2614(c)(3)(A).

[20]*Id.*  § 2613(a).

[21]*Id.* § 2613(b).

[22]*Id.* § 2613(a).

[23]29 C.F.R. § 825.305(b)(2003).

[24]*Id.* § 825.311(b).

the employee of the consequences for failing to provide an adequate certification.[25]

Plaintiff couches her FMLA claims on two theories: (1) interference under § 2615(a)(1) of the FMLA, and (2) discrimination under § 2615(a)(2) of the FMLA.   The Court discusses each in turn.

### B.      Interference/Entitlement

Under this theory, plaintiff has the burden to show entitlement to FMLA leave, but need not show the employer's intent to interfere with FMLA leave.[26]   Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA, regardless of its intent.[27]   In such a case, the employee must demonstrate her entitlement to the disputed leave.[28]   The intent of the employer is immaterial.[29]

Thus, a *prima facie* case under an interference/entitlement theory requires a showing of FMLA leave entitlement, a denial of substantive rights under the FMLA, and a causal connection between the two.[30]   Nonetheless, even when an employee requests and can demonstrate an entitlement to FMLA leave, she has no greater rights than the employee who continues to report to work.[31]   Thus, an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave

---

[25]*Id.* § 825.301(b)(1)(ii).

[26]*See* 29 U.S.C. § 2612(a)(1)(D).

[27]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[28]*Id.*

[29]*Id.*

[30]*Dry v. The Boeing Co.*, Case No. 01-3294, 2004 WL 309323, at *3 (10th Cir. Feb. 19, 2004) (citation omitted).

[31]*See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

request.[32]

An employee's right to FMLA leave is subject to the certification requirements of 29 U.S.C. § 2613.  Failure to meet the certification requirements renders the employee's absences unprotected by the FMLA.[33]  If these uncertified, hence unprotected, absences violate an attendance policy, an employer may terminate an employee without violating the FMLA.[34] Dolgencorp contends that plaintiff failed to provide any certification and reasons that plaintiff's absences, as well as her termination, are unprotected under the FMLA.

Plaintiff counters that she is entitled to a "mailbox presumption" that Dolgencorp received her certification, based upon her deposition testimony that she mailed the certification. "Under the common law mailbox rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee."[35]  As a general rule, evidence of nonreceipt of mail matter does not nullify the presumption, even though it consists of the addressee's positive denial of receipt, but merely creates an issue of fact for the jury, with such weight given to the presumption as the trier of fact thinks it is entitled to, with the burden of proving receipt on the party asserting it.[36]

In *Sorrentino v. IRS*,[37] a divided Tenth Circuit discussed the common law mailbox rule in the context of a tax refund suit.  In holding that the common law mailbox rule survives the

---

[32]*See id.*

[33]*See Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000).

[34]*Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331-32 (5th Cir. 1998).

[35]*Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193-04 (1884)).

[36]31A C.J.S. *Evidence* § 156 (2005).

[37]383 F.3d 1187 (10th Cir. 2004).

13

enactment of I.R.C. § 7502, the court held that a plaintiff invoking the rule must offer independent proof of a postmark, dated receipt or evidence apart from plaintiff's self-serving testament of mailing to create the presumption.[38]  The court recognized that "[a]llegations of mailing are easy to make and hard to disprove."[39]  Moreover, endorsing the mailbox presumption every time a party claims to have mailed something, without any other indicia of proof, would mean an automatic jury trial on the issue.[40]  The court considered and expressly rejected any argument that an uncorroborated claim of mailing creates a fact issue for a jury.  As the court explained, "Despite [the dissent's] contrary assertion, such a holding does not require a credibility determination.  Rather, such testimony alone, assuming its truth, is insufficient as a matter of law to establish a presumption of timely delivery."[41]

Although the parties did not cite, nor did the Court's research find, any cases applying the common law mailbox rule in the context of an FMLA case, the Court sees no reason not to apply the rule in this case.  Indeed, it is plaintiff who invoked the presumption, relying on *Sorrentino v. United States*,[42] the district court case overturned by the Tenth Circuit in *Sorrentino*.  Plaintiff's assertion that she mailed the FMLA certification is wholly unsupported or corroborated by independent evidence; she has no copy of the purported FMLA paperwork that she claims to have mailed, nor does she have a receipt of mailing or dated postmark.  Significantly, plaintiff cannot offer any independent corroboration via her treating physician,

---

[38]*Id*. at 1195.

[39]*Id*. at 1194 (internal citations omitted).

[40]*See id.*

[41]*Id.*

[42]199 F. Supp. 2d 1068 (D. Colo. 2002), *rev'd*, 383 F.3d 1187 (10th Cir. 2004).

14

whom she contends helped her fill out the paperwork.  Dr. Siebert not only testified that he did not complete the medical certification forms for plaintiff, but that he did not recall that plaintiff ever talked to him about FMLA leave.  Although Dr. Siebert's file contains copies of the work notes issued for plaintiff, it does not contain the FMLA papers for plaintiff.  Moreover, Dolgencorp attested that it did not receive the FMLA certification from plaintiff.  Consequently, even accepting plaintiff's testimony as true, the Tenth Circuit has held that without further corroboration, plaintiff cannot invoke a presumption of mailing.  Accordingly, plaintiff cannot meet her burden of proving that she was entitled to FMLA leave.

Plaintiff's claim also fails to the extent she alleges that Dolgencorp had an obligation under the FMLA to inform her that it had received no timely medical certification.  It is uncontroverted that plaintiff was provided a form to establish the required medical certification and that she had a date certain of April 5, 2005 to return the form.  Plaintiff does not allege that Dolgencorp failed to apprise her of the consequences of failing to timely return the required medical certification form.  Although an employer has a duty under the FMLA to advise an employee whenever a required certification is incomplete,[43] an employer has no such duty when an employee fails to provide timely certification in the first instance.[44]  Accordingly, Dolgencorp is entitled to summary judgment.[45]

---

[43]29 C.F.R. § 825.305(d).

[44]*Urban v. Dolgencorp of Texas*, 393 F.3d 572, 576-77 (5th Cir. 2004); *Heard v. SBC Ameritech Corp.*, Case No. 05-71712, 2005 WL 1802086, at *8 (E.D. Mich. July 27, 2005).

[45]With respect to Dr. Siebert's note dated March 30, 2005, received by Dolgencorp on April 1, 2005, plaintiff poses the question, "Does this not qualify as a medical certification?"  Plaintiff's allusion is without merit. Dr. Siebert's note simply states that plaintiff may *return* to work on April 5; it does not indicate that she requires additional time off or the duration of any expected leave or any information about the reason for plaintiff's requested time off work. Medical excuse notes offering only the name of the physician, patient, dates of treatment and date of return do not amount to medical certification under the FMLA. *See Baldwin-Love v. Electronic Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1226-27 (M.D. Ala. 2004).

### C.        Discrimination/Retaliation

When analyzing FMLA discrimination/retaliation claims under 29 U.S.C. § 2615(a)(2), courts apply the *McDonnell Douglas*[46] burden shifting approach.[47]  Under that approach, a plaintiff's establishment of a *prima facie* case creates a presumption of retaliation.  The burden then shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.[48]  If the defendant meets this burden, the burden then shifts back to the plaintiff to present evidence that the proffered reason was not the true reason for the employment decision.[49]

In order to establish a *prima facie* case of FMLA retaliation/discrimination, plaintiff must demonstrate that "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions."[50]

Under the first element, in order to avail herself of FMLA protection, plaintiff had to submit the required medical certification form to Dolgencorp.[51]  Because Dolgencorp was not provided with plaintiff's required medical certification form necessary for her to avail herself of FMLA protection, she cannot establish the first element of her *prima facie* case, and her

---

[46]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

[47]*See Morgan v. Hilti, Inc.*, 108 F. 3d 1319, 1323 (10th Cir. 1997).

[48]*See id.*

[49]*Id.*

[50]*Id.* at 1325.

[51]*See Neide v. Grand Court Lifestyles, Inc.*, 38 F. Supp. 2d 938, 950 n.12, 951 (D. Kan. 1999) (where the record evidence shows that plaintiff failed to submit the necessary FMLA paperwork, plaintiff did not avail himself of a protected right and cannot establish a *prima facie* case for retaliation); *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (plaintiff's failure to submit the requested medical certification was fatal to her ability to prove she availed herself of a protected right and, therefore, fatal to her *prima facie* case).

discrimination/retaliation claim must fail as a matter of law.  Summary judgment is granted on this claim as well.

      **IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 85) is GRANTED.

      IT IS FURTHER ORDERED that defendant's motion to strike corrections to deposition (Doc. 94) and plaintiff's motion to strike defendant's reply (Doc. 97) are DENIED.

      IT IS SO ORDERED.

      Dated this  15th  day of February 2006.

                               S/ Julie A. Robinson
                              Julie A. Robinson
                              United States District Judge